**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**
**CIVIL ACTION NO. _____**

| | |
|---|---|
| **ISMAEL ROSADO RIVERA** ) | |
| **AND SAMUEL ROSADO** ) | |
| **RIVERA** ) | |
| ) | |
| **Plaintiffs** ) | |
| ) | |
| ) | |
| ) | **COMPLAINT FOR DAMAGES,** |
| **v.** ) | |
| ) | |
| **ANTELMO BAUTISTA AND** ) | |
| **BAUTISTA FARMS** ) | |
| **TRUCKING, LLC** | |
| ) | |
| ) | |
| ) | |
| **Defendant** ) | |
| ) | |
| _____ ) | |

## PRELIMINARY STATEMENT

1. This is an action for damages, declaratory, and injunctive relief brought by two Puerto Rican migrant farm workers against the Defendant agricultural employer.  The action is based on the Migrant and Seasonal Workers Protection Act and the Fair Labor Standards Act.

2. Plaintiffs seek to redress the wrongs they suffered when their rights were violated by Defendant at the time they were recruited in Puerto Rico to perform agricultural work in Florida, and further when Plaintiffs performed this work in Florida.  Defendant was required by law to recruit Plaintiffs as a condition for accomplishing their ultimate goal:

1

to obtain certification from the Department of Labor to bring a crew of Mexican H-2A workers to work on their farm during the 2015 agricultural season.  Upon arrival, Plaintiffs found a hostile work environment, unexpected job conditions, and constant comparison of their performance to the preferred crew of Mexican workers.

3.  Plaintiffs seek money damages and declaratory and injunctive relief to redress these violations of law.

## JURISDICTION AND VENUE

4.  This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1337 (commerce).

5.  The federal claims in this action are authorized and instituted pursuant to 29 U.S.C. § 1854(a) (Migrant and Seasonal Agricultural Worker Protection Act), 29 U.S.C. § 216(b) (Fair Labor Standards Act).

6.  This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and (c), 29 U.S.C. § 1854(a). See also Villalobos v. NCGA, 42F.Supp.2d131 Opinion of Honorable Judge J. Fusté.

## PARTIES

8.  Plaintiffs Ismael Rosado Rivera and Samuel Rosado Rivera, at all times pertinent to this action, were migrant agricultural workers and U.S. citizens from Puerto Rico.  Plaintiffs were migrant agricultural workers within the meaning of the AWPA, in that they were employed on a seasonal basis harvesting oranges in Florida and were, during that time, required to be absent overnight from their permanent homes in Puerto Rico.  Plaintiffs

speak Spanish as their primary language.  Plaintiffs were employed by Defendant as agricultural workers within the meaning of 29 U.S.C. § 1802(8)(A).

9. Defendant Bautista Farms Trucking, LLC ("Bautista Farms"), is a Florida limited liability company with its principal place of business in Parrish, Florida.  At all times relevant to this action, Bautista Farms was an agricultural employer within the meaning of 29 U.S.C. § 1802(2) and continuously employed at least 15 employees.  Defendant Antelmo Bautista is a resident of Myakka City, Florida.  He is the president and owner of Defendant Bautista Farms Trucking, LLC.  At all times relevant to this action, Defendant Antelmo Bautista recruited, hired, furnished and transported Plaintiffs and other migrant and seasonal agricultural workers for agricultural employment.  At all times relevant to this action, Defendant employed Plaintiffs within the meaning of the FLSA and the regulations governing the temporary agricultural labor program in that he hired them for their jobs, provided daily work assignments, supervised their work, established their wage rates, paid them their wages and ultimately fired them from their jobs.

## STATUTORY AND REGULATORY FRAMEWORK

10. An agricultural employer, anticipating a shortage of labor to perform seasonal or temporary jobs, may import aliens to fill these positions if the United States Department of Labor ("USDOL") certifies that two conditions are met:  (1) there are not enough U.S. workers ready and available to perform the jobs and (2) the hiring of alien workers will not adversely affect the wages and working conditions of similarly-employed U.S. workers.  8 U.S.C. §§1101(a) (15) (H) (ii) (a) and §1188(a) (1); 20 C.F.R. § 655.103(a).  Aliens admitted in this fashion are commonly referred to as H-2A workers, based on the section of the Immigration and Nationality Act that authorizes their admission.

11. Agricultural employers seeking the admission of H-2A workers must file a temporary labor certification application with the USDOL.  20 C.F.R. 655.130.  This application must include a job offer, commonly referred to as a "clearance order" or "job order", complying with applicable regulations.  20 C.F.R. §§ 655.121 and 655.130(a).  These regulations establish the minimum benefits, wages and working conditions which may be offered in order to avoid adversely affecting similarly-employed United States workers.  20 C.F.R. § 655.122(c).  The job order serves as the employment contract between the petitioning employer and those workers hired to perform the job duties described therein.  20 C.F.R. § 655.122(q).

12. Employers seeking to hire H-2A workers must offer U.S. workers, at least, the same benefits, wages and working conditions that it offers to H-2A workers.  Furthermore, putative H-2A employers may not impose on U.S. workers any restrictions or obligations that they will not also impose on H-2A workers.  20 C.F.R. § 655.122(a).  Any job qualification or requirement, including productivity requirements, must be bona fide and consistent with the normal and accepted requirements of employers in the same crops who do not employ H-2A workers.  20 C.F.R. § 655.122(b).

13. The job order submitted by a putative H-2A employer must include a number of specific job terms.  20 C.F.R. § 655.122.  Among other things, the employer must:

- Provide to any non-local worker free housing meeting applicable OSHA safety and health standards for temporary labor housing.  20 C.F.R. § 655.122(d);

- Provide the worker free of charge with all tools and equipment needed to perform the job.  20 C.F.R. § 655.122(f);

- Reimburse to those workers completing the first 50% of the work contract period the costs of inbound transportation from the worker's home to the employer's jobsite and subsistence en route.  20 C.F.R. § 655.122(h)(1);

- Provide or pay for the return transportation to the worker's home and subsistence en route for those workers completing the contract period.   20 C.F.R. § 655.122(h)(2);

- Offer the worker employment for at least 3/4 of the hours set out in the job order, or pay compensation to the worker for any shortfall under this guarantee.   20 C.F.R. § 655.122(i);

- Pay the worker weekly wages at least equal to the applicable adverse effect wage rate.  20 C.F.R. § 655.12(1);

- Notify the USDOL National Processing Center and the Department of Homeland Security in writing within two days of terminating any worker hired under the job order.  20 C.F.R. § 655.122(n); and

-  Offer wages and working conditions no less than the prevailing wages and working conditions among similarly-employed agricultural workers in the area of intended employment.  20 C.F.R. § 653.501(d)(4).

14. As part of its temporary labor certification application, an employer seeking to import H-2A workers must, *inter alia*, agree to cooperate with state workforce agencies and otherwise independently engage in positive recruitment of U.S. workers for the positions for which H-2A workers have been requested.  20 C.F.R. § 655.135(c).  The employer

must engage in positive recruitment within a multistate region of traditional or expected labor supply where the USDOL certification officer finds there are a significant number of qualified U.S. workers who, if recruited, will be willing and able for work at the place and time requested.  20 C.F.R. § 655.154(a).  The employer must agree to provide employment to any qualified, eligible U.S. worker who applies to the employer up until through the first 50 percent of the period of employment set out in the job order.  20 C.F.R. § 655.135(d).

15. The recruitment period lasts until 30 days after the first date the employer requires the services of the H-2A workers.  § 655.102(f) (3).  During this period, the job opportunity must remain open to any qualified U.S. worker regardless of race, color, national origin, age, sex, religion, handicap, or citizenship.  § 655.105(a).  Any U.S. worker who applies for a job during this period may only be rejected for lawful, job-related reasons.  *Id.*  The employer must retain records of all rejections of U.S. workers.  *Id.*

16. The job order is commonly known as the clearance order.  The terms and conditions of the clearance order constitute an employment contract between the employer and the H-2A workers and any U.S. workers who fill H-2A positions.  20 C.F.R. § 655.104(q).

17. The clearance order is used in pre-filing recruitment by the U.S. Employment Service and its related state agencies, including the Puerto Rico Department of Labor, to recruit and refer job applicants.  §§ 655.104 and 653.501.

18. The clearance order must include terms such as job qualifications, minimum benefits, wages, and working conditions.  It must offer to U.S. workers no less than the same benefits and working conditions that the employer will  offer to H-2A workers, and may

not impose on U.S. workers any restrictions or obligations that will not be imposed on H-2A workers.  § 655.104.

19. The clearance order must specify any minimum productivity standard that is a condition of job retention, if the employer pays by a piece rate, and the productivity standard must be normal; i.e. not unusual for workers performing the same activity in the area of intended employment, under 20 C.F.R. § 655.104(l)(2)(iii).

20. The employer must provide all workers, without charge or deposit charge, all tools, supplies and equipment required to perform the duties assigned.   20 C.F.R. §655.104(f).

21. Pursuant to USDOL regulations pertaining to all clearance orders, including H-2A clearance orders, employers using the Job Service interstate system must provide to all workers referred on such orders, for the week beginning with the anticipated date of need, the number of hours of work specified in the clearance order.   20 C.F.R. §653,501(d)(2)(v)(A).  This is known as the "first week's guarantee".

## **<u>FACTS</u>**

22. On or about March 10, 2015, Defendant applied to USDOL for permission to hire ninety nine (99) H-2A workers to do field work cultivating and harvesting its crops, starting April 25, 2015 and ending in December 15, 2015.   USDOL accepted Defendant's application.  A copy of the 2015 Bautista Farms Clearance Order ("2015 Order" or "the Clearance Order") submitted as part of this application is attached as Exhibit 1.

23. Upon information and belief, in 2014 Defendant had, following the same process, hired H-2A workers from Mexico to do similar work on its farm.

24. Upon information and belief, in 2015 Defendant intended to rehire most of the same Mexican H-2A workers.

## RECRUITMENT

25. In accordance with the regulations, Defendant's clearance Order was sent to traditional labor supply states and Puerto Rico. Pursuant to its responsibilities under the regulations, the Puerto Rico Department of Labor (PRDOL) began to assist Defendant to recruit migrant agricultural workers.

26. In early spring of 2015, Plaintiffs, who were unemployed in Puerto Rico, learned of the possibility of doing farm work in Florida while visiting a local office of PRDOL.  After they received an orientation from the PRDOL officials, Plaintiffs accepted the job offer.

27. At the time of their recruitment in Puerto Rico, Plaintiffs received a copy of the Clearance Order in English and Spanish, their native language.

## THE CLEARANCE ORDER

28. Defendants, in their Clearance Order, indicated that workers would do a wide variety of tasks:

> "Cultivate and harvest tomatoes-move around field to picking location and pluck vegetables from plants, walk to and empty buckets into bins (25%). Cultivate and harvest cucumbers - move around field to picking location and pluck vegetables from plants, walk to and empty buckets into bins (25%). Cultivate and harvest peppers - move around field to picking location and pluck vegetables from plants, walk to and empty buckets into bins (25%). Field care- tie plants, stake plants, prune plants, clean drip emitters and microjets, remove plastic drip lines, remove dead plants, and weed removal. Workers will walk along rows as specified by employer and remove weeds and grass from fields by hand or using a hoe (25%). Prolonged standing, bending, stooping, and reaching.  Job is outdoors and continues in all types of weather.

Workers may be requested to submit to random drug or alcohol tests at no cost to the worker. Failure to comply with the request or testing positive may result in termination. All testing will occur post-hire and is not a part of the interview process. Must be able to lift 70lbs., to shoulder height repetitively throughout the workday and able to lift and carry 70 lbs. in field. Must keep up with other workers in the field. Use of personal cell phone or other personal electronic device during working hours strictly prohibited except for work-related calls or emergencies and violation may result in immediate termination."

29. The Clearance Order did not require prior experience in farm work. The Clearance Order only stated that "the employer will provide/allow one (1) week of work for worker to reach production standards."

<u>**PLAINTIFFS BEGIN WORK**</u>

30. In or around April, 2015, Plaintiffs used their savings or borrowed money to purchase plane tickets, and they traveled from their home in Puerto Rico to Florida to commence work for Defendant.  Plaintiffs received $462.97 for their first work week. The minimum federal salary would be $308.05. Plaintiffs paid $310 for traveling costs. Their net pay was $152.97, which is under the minimum federal salary.

31. Upon arrival, Plaintiffs were given handbooks that contained a copy of the Clearance Order and the rules and policies of Defendant.

32. Plaintiffs arrived at the farm in March and began work on April 25, 2015.  The contract stated they would work 47 hours a week.   Plaintiffs were assigned by Defendant to work first plucking cucumbers.

33. Plaintiffs were housed together in a hotel, Knights Inn.

34. Plaintiffs allege that the bathrooms were far from the work site. When this happened, they were told to do their necessities somewhere in the field, while the Mexican workers were driven to the bathrooms. The working arrangement implicitly includes a promise by the employer to comply with applicable federal labor protection standards, such as field sanitation requirements.

35. For their first few days of work, Plaintiffs worked alongside a crew of approximately a hundred of Mexican workers performing the same task, but were assigned by Defendant to lines with much less cucumbers to pluck.

36. Plaintiffs had to buy gloves in order to work with the cucumbers since the employer, Defendant, did not provide them. Defendants did not provide drinking water in the field.

37. Although the Clearance Order indicates that plucking cucumbers was to be paid by the hour, from the start Defendant made it clear to Plaintiffs that they needed to work more and more quickly. Defendant imposed a production standard of plucking cucumbers a certain number of flats within a given period upon the local workers and gave Plaintiffs the impression that they would be paid for the number of cucumbers they plucked. The number of flats necessary to meet the standard was very high.

38. Plaintiffs generally kept up with other workers plucking cucumbers.

39. Upon information and belief, Defendant manipulated the production standard so that all members of the Mexican crew met the standard they had imposed, while Plaintiffs and the local workers failed to meet it.

40. Throughout the days that Plaintiffs worked for Defendants, they were subjected to treatment that was different from the Mexican crew. For example, they were not permitted to work in lanes with more cucumbers to pluck and were asked to help

Mexican coworkers that did not keep their pace with the rest of the crew. As a result, Plaintiffs could not meet the production standard.

41. Supervisor "Memo", who upon information and belief is a Mexican H-2A worker, frequently described and denounced the Plaintiffs using profanity and racial epithets regarding their Puerto Rican origin.

42. Despite the constant discrimination in the work assignment, Plaintiffs continued to do all work assigned to them. In the field, Plaintiffs were told they had to keep up with the pace of the Mexican crew.

43. Defendant imposed a production test upon the Plaintiffs which it did not impose uniformly upon all its employees.

44. Plaintiffs felt the production test was unfair, and asked to be given an opportunity to work in other crops. This petition was denied.  Plaintiffs explained that they had not intended to quit, only lodging a complaint about the production test.

45. The following morning, May 13, Plaintiffs received a visit from Corina Bautista, who gave them an envelope with their last check and a letter to be signed which was not translated or discussed with Plaintiffs and asked them to leave the hotel.

## FIRST CLAIM FOR RELIEF: MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT

46.  This claim arises under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801 *et seq.* against the Defendant.

47.  Defendant violated the rights of the Plaintiffs under the AWPA in that, among other things, they:

a.    knowingly provided false and misleading information to the Plaintiffs regarding the terms and conditions of employment in violation of 29 U.S.C. §§ 1821(f) and 29 C.F.R. § 500.77;

b.    without justification, violated the terms of their working arrangement with the Plaintiffs in violation of 29 U.S.C. §§1822(c) and 29 C.F.R. § 500.72.

c.    violated, without justification, the terms of their working arrangements with Plaintiffs, as embodied in the job order.  Among other things, Defendants:

d.    failed to include a material term and condition of employment in the job order, *i.e.*, the production standard which Plaintiffs allegedly failed to meet and which resulted in their termination on May;

e.    failed to pay Plaintiffs at least the applicable adverse effect wage  rate for their work;

f.    failed to provide drinking water at the jobsite as required by OSHA regulations;

g.    failed to comply with field sanitation requirements by not providing toilettes within a quarter-mile walk.

h.    failed to offer Plaintiffs working conditions at least equal to those  offered Defendants' H-2A workers;

i.    failed to offer Plaintiffs work for 3/4 of the hours listed in the job order or payment for any shortfall.

j.    failed to provide the necessary equipment to perform work. Plaintiffs had to buy gloves to perform their chores, in violation of 20 CFR § 655.122 (f).

48. As a result, Plaintiffs suffered injuries.

49. For each such violation of the AWPA, the Plaintiffs are entitled to recover their actual damages or up to $500 per violation in statutory damages.

## SECOND CAUSE OF ACTION: FAIR LABOR STANDARDS ACT

50. This claim arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* against the Defendant.

51. Failed to provide or pay for inbound transportation expenses and for subsistence en route in their first week salary, reducing their salary in the amount of $310.00 thus reducing their first week pay under the minimum wage of Seven Dollars Twenty Five Cents ($7.25) an hour.

52. Plaintiff Samuel Rosado received $421.75 for his first work week. The minimum federal salary would be $299.64 for 41.33 hours worked. Plaintiff paid $310 for traveling costs. His net income was $111.75, which is under the federal minimum wage of $7.25 an hour.

53. Plaintiff Ismael Rosado received $432.97 for his first work week. The minimum federal salary would be $308.05 for 42.49 hours worked. He paid $310.00 for traveling costs. His net Income was $122.97, which is under the federal minimum wage of $7.25 an hour.

54. The violations of the FLSA set out above resulted from Defendant's failure to reimburse Plaintiffs for travel and other expenses incurred which were primarily for the benefit of Defendant during the Plaintiffs' first work week, thereby reducing the Plaintiffs' wages below the minimum wage.  As a result of the violations set out above, Plaintiffs suffered injuries.

55. As a consequence of Defendant's violations of their rights under the FLSA, Plaintiffs are entitled to their unpaid wages, plus an additional equal amount in liquidated damages, costs of court, and reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court grant them the following relief:

a.  Declare that Defendants Bautista Farms Trucking, LLC and Antelmo Bautista violated Plaintiffs' rights under the AWPA;

b.  Award Plaintiffs their actual damages, or statutory damages of $500 per person, whichever is greater, for each of Defendant's violations of the AWPA;

c.  Declare that Defendant violated Plaintiffs' rights under the FLSA;

d.  Award Plaintiffs their unpaid minimum wage and an equal amount in liquidated damages;

e.  Award Plaintiffs all monetary relief necessary to eradicate the effects of its unlawful employment practices.

f.  Award Plaintiffs compensation for past and future non pecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, and inconvenience, in amounts to be determined at trial.

g.  Award Plaintiffs punitive damages for Defendant's malicious and reckless conduct, in amounts to be determined at trial.

h.  Award Plaintiffs Attorney's Fees, their reasonable expenses and costs of court;

i.  Award Plaintiffs prejudgment and post judgment interest as allowed by law;

j.  Award Plaintiffs such other relief as this Court deems just and proper in the public interest.

Respectfully Submitted,

This March 15, 2016

S/Julio M. López Keelan

_____

Julio M. López Keelan

   USDC 121011

Puerto Rico Legal Services

Migrant Farmworker Project

PO Box 21370

San Juan, P.R, 00928-1370

787-296-8020

jlopezk@servicioslegales.org

juliolopezkeelan@gmail.com